**Lloyd W. HAMMOND, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000639–MR.

Supreme Court of Kentucky.

May 24, 2012.

Elizabeth B. McMahon, Assistant Public Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, David Wayne Barr, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Lloyd W. Hammond, was convicted by a Jefferson Circuit Court jury of three counts of murder, one count of first-degree burglary, one count of first-degree unlawful imprisonment, and retaliating against a participant in the legal process. Although the Commonwealth sought the death penalty, Appellant was sentenced on each murder count to imprisonment for life without the possibility of parole in accordance with the jury's verdict. He also received a total sentence of thirty years' imprisonment for the other crimes. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110.

We now reverse Appellant's convictions and remand to the Jefferson Court for a new trial upon the grounds that Appellant was deprived of a fair trial when one of the murder charges was improperly joined for trial with the other charges, and because the admission of hearsay statements of a material witness under the doctrine of forfeiture by wrongdoing was not based upon substantial evidence. Appellant raises other issues which we decline to address because they are unlikely to recur upon retrial, or would recur under such different circumstances that our opinion would not provide useful guidance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Within the span of two weeks in June 2006, William Sawyers, Terrell Cherry, and Kerry Williams were all shot and killed in Louisville. First, intruders unlawfully entered the home of Troya Sheckles, where they murdered William Sawyers. A few hours later, Terrell Cherry was found shot and killed in a parked car. Two weeks later, Kerry Williams was shot

and killed as he stood on his porch talking to visitors.

Police gathered evidence identifying Appellant and Terrell Cherry as the perpetrators of the Sheckles burglary and the Sawyers murder. Evidence also indicated that shortly after the Sheckles burglary, Appellant murdered Cherry to keep him from testifying about that crime and the Sawyers murder. Appellant was charged with the murders of Sawyers and Cherry, as well as the other crimes that occurred during the Sheckles burglary. Evidence was also developed identifying Appellant as the gunman who killed Williams.

Initially, it was determined that the Williams murder case would be tried separately from the Sawyers–Cherry murders and the related charges connected with the Sheckles burglary. However, before either case could be tried, the Commonwealth moved to dismiss all charges without prejudice. The charges relating to the Sawyers and Cherry murders were dismissed because Troya Sheckles, the only eye witness to the Sawyers murder, could not be located.[1] The Williams murder case was dismissed when a key witness asserted his Fifth Amendment privilege to not testify.

In due course, Appellant was re-indicted on all of the previously dismissed charges. The murder of Kerry Williams was contained in Indictment 09–CR–2661. The murders of Sawyers and Cherry and the crimes connected to the Sheckles burglary were charged in Indictment 09–CR–0329. The trial of Indictment 09–CR–0329 (Sawyers–Cherry murders and related crimes) ended in mistrial when a potential juror disrupted the proceedings. Over Appellant's objection, the case was re-scheduled for trial and consolidated with the Williams murder, Indictment 09–SC–2661. A joint trial on all charges was held, resulting in Appellant's conviction on all counts. This appeal followed.

## II. JOINDER OF THE WILLIAMS MURDER WITH THE SAWYERS AND CHERRY MURDERS AND OTHER CRIMES ARISING FROM THE SHECKLES BURGLARY WAS IMPROPER

Appellant argues that the trial court abused its discretion by consolidating the indictment containing the Sawyers and Cherry murder charges with the indictment containing the Williams murder charge. Appellant objected to the joinder of the two indictments for trial and moved unsuccessfully to sever the Williams murder trial from the other charges. He now argues that the trial court erred to his prejudice by consolidating all of the charges into a single trial. He specifically argues that the Williams murder was not connected to the other crimes as part of a common scheme or plan, and that the Williams murder was not "of the same or similar character of the other crimes charged." We agree, and because we further find the improper joinder of charges was prejudicial to Appellant, we reverse the judgment and remand for new, and separate, trials.

▮▮▮ The interaction of RCr 9.12 and RCr 6.18 allows the charges brought in separate indictments to be joined for trial only when the offenses are "of the same or similar character" or are "based on the same acts or transactions connected together or constituting parts of a common

---

1. Sheckles was later found, and Appellant was re-indicted. Before the case could be brought to trial, Sheckles was shot and killed as she sat in a park near her home on March 29, 2009.

scheme or plan." [2] When the conditions set forth in RCr 6.18 and RCr 9.12 are present, the trial judge has broad discretion to allow the joinder of offenses charged in separate indictments. *Brown v. Commonwealth,* 458 S.W.2d 444, 447 (Ky.1970). We review such decisions for abuse of discretion. *Violett v. Commonwealth,* 907 S.W.2d 773, 775 (Ky.1995). Nevertheless, to be reversible, an erroneous joinder of offenses must be accompanied by "a showing of prejudice" to the defendant. *Rearick v. Commonwealth,* 858 S.W.2d 185, 187 (Ky.1993). This showing of prejudice cannot be based on mere speculation, but must be supported by the record. *Jackson v. Commonwealth,* 20 S.W.3d 906, 908 (Ky.2000).

■ Here, no serious contention was made that the Williams murder was connected to the other crimes as part of the "same acts or transactions connected together or constituting parts of a common scheme or plan." That rationale for joinder under RCr 9.12/RCr 6.18 has no application here. The Commonwealth instead contends that joinder was proper because the Williams murder was "of the same or similar character" as the Cherry–Sawyers murders.

Specifically, the Commonwealth argues that "murder is murder" and, therefore, *any* charge of murder may be properly joined with any other charge of murder. We reject that oversimplification of RCr 6.18. Offenses are not "of the same or similar character" under RCr 6.18 simply because they involve conduct criminalized under the same chapter or section of the penal code. And even if we agreed with that point, the Commonwealth shows no authority for the joinder of the Williams murder charge with the totally dissimilar and unrelated crimes of burglary, retaliation against a witness, and unlawful imprisonment.

The Commonwealth supplements its argument with the fact that all of the alleged crimes occurred "close in time" to each other and in Jefferson County. While temporal and geographic proximity will often be relevant considerations when the question is whether the "acts or transactions [are] connected together or constitut[e] parts of a common scheme or plan," those factors often have little to do with whether the offenses are "of the same or similar character."

Upon consideration of the question on a previous occasion, we held that a "significant factor in identifying prejudice from joining offenses for a single trial is the extent to which evidence of one offense would be inadmissible in the trial of the other offense." *Rearick,* 858 S.W.2d at 187 (citing *Spencer v. Commonwealth,* 554 S.W.2d 355, 357 (Ky.1977)).[3] *Rearick* holds, for example, that for sexual offenses to qualify for joinder as offenses "of the same or similar character," the crimes must be so strikingly similar as to meet the requirements for admission under KRE 404(b) as set out in *Billings v. Commonwealth,* 843 S.W.2d 890 (Ky.1992), and *Gray v. Commonwealth,* 843 S.W.2d 895 (Ky.1992).

---

**2.** RCr 9.12 provides that two or more indictments may be tried together if the offenses could have been joined in a single indictment. Under RCr 6.18, separate offenses may be joined in a single indictment when they are "of the same or similar character," or are "based on the same acts or transactions connected together or constituting parts of a common scheme or plan."

**3.** *See also Marcum v. Commonwealth,* 390 S.W.2d 884, 886 (Ky.1965) ("The admissibility of evidence of other crimes in separate trials is a significant factor in determining whether joinder of crimes for trial is prejudicial").

The Commonwealth claims that test was met here because the Cherry and Sawyers murders would be admissible *in the sentencing phase* of a trial for the Williams murder. That answer is unpersuasive. First, we note that KRS 532.055(2)(a)(2) allows evidence in the sentencing phase of "prior offenses for which [a defendant] was convicted." If Appellant was being tried only upon the Williams murder, the Sawyers and Cherry murders *would not* be admissible at the sentencing phase because he had obviously not yet been convicted of those murders. Furthermore, during the sentencing phase, guilt has already been fairly determined and the danger that evidence of other crimes will cause undue prejudice has largely passed. Indeed, at the sentencing phase we permit the jury to hear evidence of virtually any other criminal conviction on the defendant's record, regardless of its similarity or lack thereof. Under the *Rearick* analysis, we see no basis upon which evidence of the Cherry and Sawyers murders could have been introduced in the prosecution of Appellant for the Williams murder; neither do we see how evidence of the Williams murder could have been admitted in Appellant's trial for killing Cherry and Sawyers.

The Commonwealth further argues that joinder of the Williams murder charges with the other murders was proper because this was a capital case in which each murder would necessarily serve as an aggravating factor under KRS 532.025(3) for imposition of the death penalty (or life without possibility of parole) for the other murders. We are aware of no authority and we are cited to none that supports the view that unrelated capital offenses may be joined for trial notwithstanding their failure to meet the requirements of RCr 6.18 and RCr 9.12. The consequence of such a rule would be that a defendant facing the death penalty would have *less* protection from the prejudicial effects of other crimes evidence than a non-capital defendant. We reject that argument.

Finally, we address the Commonwealth's reliance upon *Parker v. Commonwealth,* 291 S.W.3d 647 (Ky.2009) as authority supporting the consolidation of the charges for trial. In *Parker,* the defendant was charged with multiple offenses including criminal syndication. Under RCr 6.18, joinder becomes an easy fit for the various crimes allegedly committed in the furtherance of a criminal syndicate because, as we said in *Parker,* "the criminal syndication charge serves to link the other charges together." *Id.* at 657. They are "acts or transactions connected together or constituting parts of a common scheme or plan." Appellant's crimes were not charged as elements of a criminal syndicate, and as noted above, no argument was made that Appellant's crimes were linked together as parts of a common scheme or plan. *Parker* does not serve as authority for the joinder of the Williams murder with the other crimes.

For the reasons stated above, we conclude that the trial court abused its discretion when it joined the Williams murder trial with the unrelated charges arising from the Sheckles burglary, including the Cherry and Sawyers murders. We next consider whether that error was prejudicial to Appellant.

■ Whatever chance Appellant might have had to present a defense to the Williams murder was substantially impaired by the unrelated evidence that he had also killed both Cherry and Sawyer, unlawfully invaded Sheckles's home and held her in unlawful imprisonment. We said in *Rearick* that joinder of offenses with no more than a general similarity in character created "a substantial likelihood that the inadmissible 'other crimes' evidence tainted the jury's belief as to each of

the crimes charged and that each additional unrelated charge took on a weight by virtue of being joined with the others whereby the whole exceeded the sum of its parts." *Rearick,* 858 S.W.2d at 188. Because of this prejudice, we reverse Appellant's convictions and remand this matter to the Jefferson Circuit Court for new trials consistent with this opinion.

## III. ADMISSION OF SHECKLES'S OUT–OF–COURT STATEMENT TO POLICE UNDER THE DOCTRINE OF FORFEITURE BY WRONGDOING

Appellant next argues that the trial court erred by allowing the Commonwealth to admit into evidence the audio recordings of Troya Sheckles's statement to police investigators. Sheckles was the only eyewitness to the Sawyers murder and the related crimes but, as noted above in footnote 1, she was unavailable as a witness because she was murdered before Appellant's trial began. It is not disputed that Sheckles's out-of-court statement would ordinarily be inadmissible under the hearsay rules and that, in ordinary circumstances, its admission would violate the Sixth Amendment right of confrontation under *Crawford v. Washington,* 541 U.S. 36, 62, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

However, the Commonwealth claimed that Appellant orchestrated Sheckles's murder to prevent her from testifying against him at trial. It filed a motion to have Sheckles's out-of-court statement admitted into evidence at trial under the forfeiture by wrongdoing exception to the hearsay rule. KRE 804(b)(5)

provides that the hearsay rule does not apply to "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." The Sixth Amendment right of confrontation is also subject to the doctrine of forfeiture by wrongdoing. *Davis v. Washington,* 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). ("One who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.")

The Commonwealth's motion was heard by the trial court at a pre-trial conference. To sustain its burden of proving that Appellant procured Sheckles's unavailability as a witness, the Commonwealth presented the trial court with an eighty-four page set of documents pertaining to the investigation by police into Sheckles's murder.[4] The prosecutor then outlined for the trial court his theory of how Appellant arranged for Sheckles to be killed. The prosecutor averred that his theory was supported by information gleaned from the stack of documents. There was no formal evidentiary hearing. No live witnesses testified to establish the verity of the documents or to be cross-examined about the contents or preparation of the documents. There was no stipulation of facts or evidence. Appellant argued that the hearsay statement at issue could not be ruled admissible under KRE 804(b)(5) without an evidentiary hearing, and that the of stack of documents, as presented to the court, could not be regarded as "evidence" without a proper foundation.

Over Appellant's objection, the trial court took the matter under submission.

---

4. The documents which had been provided in advance to defense counsel, included copies of the 911 log, the statement of the first responders to the shooting, transcripts of police interviews with witnesses to Sheckles's shooting, a log from the jail showing the times for Hammond's visits with his brother, an aerial photo of the scene of the shooting, autopsy records, and the arrest reports of the alleged shooter.

Based exclusively upon the documents, tendered without any supporting testimony or foundation, the court found upon "reasonable inferences" drawn from the documents that Sheckles was killed by Appellant's brother and another individual "at the behest of, or at the very least, the acquiescence of [Appellant]" in order to prevent her from testifying at Appellant's trial. Written findings were entered accordingly, along with an order granting the Commonwealth's motion to admit into evidence at trial the out-of-court statement Sheckles made to police. At trial, the jury was allowed to hear the out-of-court statement Sheckles had provided to police officers.

Appellant's complaint on appeal is two-fold. First, he contends that the hearing held by the trial court was not a proper evidentiary hearing as required by *Parker*, 291 S.W.3d at 669–670, and that it did not otherwise conform to due process standards. Second, he contends that the information submitted to the court did not sufficiently prove his involvement in the Sheckles murder.

 *Parker* holds that when the issue of forfeiture by wrongdoing is raised "[the] trial court must hold an evidentiary hearing before ruling on the admissibility of the proposed hearsay," and "the proponent of the hearsay must first introduce evidence establishing good reason to believe that the defendant intentionally procured the absence of the declarant." *Id.*[5] The "burden [then] shifts to the party opposing introduction of the hearsay to offer credi-

ble evidence to the contrary." *Id.* The proponent of the hearsay evidence bears the burden of proving its claim by a preponderance of the evidence. *Id.*

Finally, *Parker* cited *Young v. Commonwealth*, 50 S.W.3d 148, 167 (Ky.2001) for the following, regarding our standard of review on appeal:

[W]hen the determination depends upon the resolution of a preliminary question of fact, the resolution is determined by the trial judge under KRE 104(a) on the basis of a preponderance of the evidence, *Bourjaily v. United States*, 483 U.S. 171, 175 [107 S.Ct. 2775, 97 L.Ed.2d 144] (1987); and the resolution will not be overturned unless clearly erroneous, i.e., unless unsupported by substantial evidence. Cf. *Commonwealth v. Deloney*, Ky., 20 S.W.3d 471, 473–74 (2000) (trial judge's findings of fact are not clearly erroneous if supported by substantial evidence).

While *Parker* does specify with particularity the essential elements of due process required for a proper forfeiture by wrongdoing hearing, it clearly states that "the proponent of the hearsay *must first introduce evidence*" to establish the factual basis for applying the doctrine. *Parker*, 291 S.W.3d at 670 (emphasis added). Moreover, implicit in the Commonwealth's burden of proving the issue by a "preponderance of the *evidence*" is that *evidence* is necessary. Thus, while we recognize that the evidentiary hearing to determine the question of forfeiture by wrongdoing is not governed by the Kentucky Rules of Evidence,[6] it should go without saying that the

---

**5.** *Giles v. California*, 554 U.S. 353, 359, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008) clarifies that the burden is on the state to show that the defendant "engaged in conduct *designed* to prevent the witness from testifying" at trial. Showing merely that the defendant caused the witness's unavailability is insufficient. In cases where the evidence suggested that the

defendant had caused a person to be absent, but had not done so to prevent the person from testifying—as in the typical murder case involving accusatorial statements by the victim—the testimony was excluded. *Id.* at 306–361, 128 S.Ct. 2678.

**6.** KRE 104(a) provides that "preliminary questions concerning ... the admissibility of

party with the burden of proof must present *some* evidence to prove the material facts at issue.[7]

■ Without a stipulation by Appellant, it was incumbent upon the Commonwealth to establish that the documents submitted to the trial court were, in fact, what they were purported to be and that the information upon which it relied to make its case was credible. Ordinarily, that would be done by witness testimony, presumably the police investigator who prepared the documents or was otherwise sufficiently apprised of their creation and content, and competent as a witness to authenticate them and answer questions posed by the court or the opposing party. Without even some rudimentary authentication of the documents, the opposing party has no reasonable means to challenge the veracity of the contents of documents and the trial court cannot reasonably accept the documents as evidence worthy of its consideration. We do not say that in all cases this requirement can only be satisfied by the testimony of a live witness. But, we do say that until some manner of accreditation was provided to cloak the information contained in the documents with even a modicum of reliability, the eighty-four-page stack of papers did not become "evidence," and findings drawn from it cannot be regarded as being supported by "substantial evidence." It is simply not enough to presume the contents of the documents are reliable because they

were gathered by the police investigating a homicide.[8]

Because the trial court's findings with respect to the forfeiture by wrongdoing doctrine were based exclusively on the unauthenticated documents tendered by the Commonwealth without any evidentiary foundation, we conclude that they are not supported by substantial evidence as required by *Young,* 50 S.W.3d at 167, and therefore the trial court's decision to admit Sheckles's out-of-court statement was clearly erroneous. It follows that the Appellant's convictions for the crimes associated with the burglary of Sheckles's home, including the Sawyers murder and the Cherry murder must be reversed and remanded for a new trial.

Appellant's second argument—that the information contained in the eighty-four pages of documents does not support the finding that Appellant procured Sheckles's death for the purpose of rendering her unavailable to testify at his trial—exposes an additional problem inherent in the trial court's informal method of resolving this issue. We address the point to avoid its repetition upon retrial. Nowhere in the record before this Court does the Commonwealth connect the assortment of facts and circumstances that comprise its theory of Appellant's role in Sheckles's murder to the specific documents where those facts are established. For example, the trial court finds that "The Commonwealth has

evidence shall be determined by the court[.] In making its determination [the court] is not bound by the rules of evidence except those with respect to privileges."

7. Obviously, the requirement for evidence at an evidentiary hearing can be waived, for example when the opposing parties enter into a stipulation of facts.

8. Compare, for example, *Rodgers v. Commonwealth,* 285 S.W.3d 740, 755 (Ky.2009),

where a defendant's right to self-defense immunity under KRS 503.085 could be defeated by the Commonwealth upon a showing of probable cause based upon "witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record" because one claiming self-defense immunity from prosecution has no right to an evidentiary hearing on the issue.

produced evidence that [Appellant's brother] procured a juvenile with the initials S.P. a/k/a Pedro to perform the killing [of Sheckles.]" We have been provided no citations to the record, such as it is, to review what that "evidence" is, short of sifting through the eighty-four pages of documents.

The Commonwealth contends that Appellant's involvement in the Sheckles murder is "well-documented." If so, it would be a simple matter for the Commonwealth to identify by chapter and verse the parts of documents that establish those facts. Our only means of reviewing the claim that the "evidence" was sufficient is to examine whole stack of the documents to see if we can ascertain how they support the trial court's findings. That we cannot do. The truncated hearing that was held in the trial court, coupled with the lack of any citations connecting the trial court's finding to any specific source, renders meaningful appellate review impossible.

Upon retrial, the Commonwealth bears the burden of proving forfeiture by wrongdoing and we trust that if the issue arises upon remand, the Commonwealth will properly establish at a *Parker* hearing the authenticity and reliability of the documents upon which it relies, and that the evidentiary hearing will be conducted so as to provide an adequate record of the evidence for appellate review. If upon retrial, the forfeiture by wrongdoing standards as discussed herein are met, Sheckles's statement would be admissible in the Sawyers and Cherry proceeding.

## IV. OTHER ISSUES

Appellant raised several other issues: 1) that the trial court erred by failing to strike three jurors for cause; 2) that the trial court erred by failing to declare a mistrial when, on the fifth day of testimony, a juror was approached during the lunch break in an intimidating manner by a suspicious individual. We decline to address those claims because upon retrial, it is unlikely they would arise again under the same circumstances.

Finally, Appellant also argues that the trial court erred by allowing the jury to hear the entire tape-recorded statement that witness Ericka Ford made to police detectives about Appellant because, when called as a witness at trial, Ford was unable to remember any relevant facts. Generally, a prior inconsistent statement of a witness may be used, not only to attack the credibility of the declarant, but also as substantive evidence with respect to the matter asserted. *See Jett v. Commonwealth*, 436 S.W.2d 788 (Ky.1969), and KRE 801A(a)(1) which codifies the rule in *Jett*. In *Brown v. Commonwealth*, 313 S.W.3d 577, 623 (Ky.2010)[9] we expressly declined "to jettison KRE 801A(a)(1), the rule permitting the introduction of a witness's prior inconsistent statement as substantive evidence as well as for impeachment ... a rule that has served us well for forty years.". It is also well-settled that an inconsistent statement, under KRE 801A(a)(1) includes situations where a witness testifies that he does not remember making a certain statement. *Wise v. Commonwealth*, 600 S.W.2d 470, 472 (Ky.App.1978).

We agree with Appellant that some portions of Ford's statements, and the comments of her inquisitors, were irrelevant, but upon consideration of the totality of the evidence properly admitted against Appellant, we conclude that admission of those remarks had no "substantial influence" upon Appellant's trial and did not substantially sway the jury's verdict to

9. Cert. denied, —— U.S. ——, 131 S.Ct. 904, 178 L.Ed.2d 803 (2011).

his detriment. *Winstead v. Commonwealth*, 283 S.W.3d 678, 688–689 (Ky.2009). Upon retrial, should Ford again fail to recollect relevant information in a manner inconsistent with her earlier statements, we trust the sound discretion of the trial court in determining what portions, if any, of her earlier dialogue with police should be admitted.

## V. CONCLUSION

Thus, for the above stated reasons, we reverse Appellant's convictions and sentences, and remand for a new trial or such other proceedings as are consistent with this opinion.

All sitting. All concur.