**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Hon. Audra J. ECKERLE, Judge,**
**Jefferson Circuit Court,**
**Appellee**

**and**

**William Bennett, Real**
**Party In Interest**

**2014–SC–000027–MR**

Supreme Court of Kentucky.

RENDERED: SEPTEMBER 24, 2015

Counsel for Appellant: Jack Conway, Attorney General for Kentucky, Dorislee J. Gilbert, Special Assistant Attorney General, Hon. Audra J. Eckerle, Judge, Jefferson Circuit Court.

Counsel for Real Party in Interest: G. Murray Turner, Turner Coombs & Malone, PLLC, Louisville.

OPINION OF THE COURT BY
JUSTICE ABRAMSON

This writ action arises from the criminal prosecution of Real Party in Interest William Bennett for first-degree assault and wanton endangerment. Bennett, contending he acted in self-defense and is immune from prosecution under Kentucky Revised Statute (KRS) 503.085, moved for dismissal of his indictment on immunity grounds and requested an evidentiary hearing. A review of the record reveals that Bennett was merely requesting a hearing so that the circuit court judge could view an enhanced videotape of the encounter that led to the criminal charges and not that he be allowed to call witnesses. A senior judge, presiding in Respondent's stead and acting pursuant to *Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky. 2009), reviewed evidence of record, including a videotape, and concluded that there was probable cause to believe that the force Bennett used was not legally justified. Hence, he denied the motion to dismiss. On reconsideration and without reviewing the videotape or other evidence of record, the Respondent set aside the senior judge's order and scheduled an evidentiary hearing on immunity, indicating her belief that Bennett was entitled to such a hearing and her interest in hearing from the witnesses. After asking Bennett's counsel if he would be issuing subpoenas and receiving an affirmative response, the Respondent scheduled a hearing at which witnesses, including the victims, are to appear and testify.

The Commonwealth promptly sought a writ, which the Court of Appeals denied, concluding that the Commonwealth had an adequate remedy by appeal. We find that the Respondent erred in not first considering the evidence of record (numerous witness statements from the victims, the defendant, and other witnesses as well as a videotape of the incident) to determine if there was probable cause to believe the force Bennett used was unlawful. In cases where the evidence of record is too limited for a circuit court to make that threshold determination, then a probable cause hearing may be appropriate but courts are not at liberty to bypass summarily the procedure outlined by this Court in *Rodgers*, a procedure designed to balance the important immunity shield with the equally important interest in having the elements of a criminal charge decided by a jury where probable cause is present. Under our writ jurisprudence, there is no adequate remedy by appeal where the trial court's erroneous action will result in a "substantial miscarriage of justice," and "correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961). As outlined below, that standard is met here and a writ is appropriate. Because a full understanding of this matter entails appreciating the relevant facts in the criminal prosecution, we begin with a statement of those facts.

### RELEVANT FACTS

On September 1, 2012, a group of people gathered at the home of Shelby Deutsch in celebration of his birthday. Bennett, who dated Deutsch's daughter Jericka Deutsch, was in attendance. Before the evening was over, an altercation ensued involving several people. Bennett fired a shot from his gun and the bullet struck Shelby Deutsch in the mouth, exiting his ear. A Louisville Metro Arson camera on a utility pole across the street recorded the incident. These basic facts are not in dispute.

Approximately two months later, Bennett was indicted for first-degree assault as to Shelby Deutsch and two counts of first-degree wanton endangerment as to Michael Turner and Tiffany Jecker, individuals present at the Deutsch home that

night. In his motion to dismiss on immunity grounds and request for evidentiary hearing, Bennett contended that "police made the decision to charge the Defendant with little or no investigation and prior to viewing the video which clearly shows that Defendant acted in self protection." After discussing this Court's *Rodgers* decision and the applicable probable cause standard, Bennett's motion concluded with the following: "A simple view of the video of the events in this case clearly shows that the Defendant was under attack and acted in self-protection and thus the force used herein [was] legally justified." In response, the Commonwealth noted that it had filed discovery in the case, including the videotape as well as statements from victims and witnesses taken shortly after the shooting, and requested that the trial court determine the immunity issue on the evidence of record as directed in *Rodgers*.

The trial court initially scheduled an April 22, 2013 hearing. At that hearing, the Commonwealth and the defense were both prepared to play videos of the incident, with the Commonwealth apparently relying on the original unenhanced videotape and the defense having an enhanced videotape of higher quality. A review of the hearing reveals that both counsel intended to rely on their respective videos and arguments regarding the evidence of record. Without viewing either videotape, Respondent opined that an evidentiary hearing with live testimony was necessary in order for the Commonwealth to meet its burden of proof and scheduled a hearing for July 22.

The Commonwealth made a motion to reconsider, and at a May 31 hearing on that motion Senior Judge Steve Mershon, sitting in Respondent's stead, heard arguments of counsel. Three days later, after reviewing "all discovery, particularly including the videotape," Judge Mershon issued a five-page order denying Bennett's motion to dismiss. His factual findings were as follows:

Having reviewed the discovery, the Court finds that there is probable cause to believe, in fact, that on or about September 1, 2012, William Bennett and his girlfriend, Jericka Deutsch, were at a family gathering celebrating the victim's birthday. Following a gathering for pizza, the parties returned to the Deutsch residence. At some point in the early evening, Mr. Deutsch and Mr. Bennett began arguing about Mr. Bennett's relationship with Jericka Deutsch. The two men stepped outside and the verbal argument continued. Mr. Bennett *left the gathering and came back with a gun* a short time later with another male, Brandon Haycraft.

Mr. Deutsch and Mr. Bennett began verbally arguing again. The argument moved out to the front of the house. At some point, a group was gathered in front of the house around William Bennett's car. Mr. Bennett was standing outside the car, and Brandon Haycraft was sitting in the front passenger seat of the car. The group out front consisted of Mr. Deutsch, Jericka Deutsch, Justin Deutsch, Michael Turner, Tiffany Jecker and Brandon Haycraft (in the car). At some point, Michael Turner lunged toward the Defendant and grabbed him by the shirt collar. William Bennett produced a gun and fired a shot. The bullet hit Shelby Deutsch. The bullet traveled into his mouth and exited his ear with minor damage. By pure coincidence, Louisville Metro Arson had a camera on the telephone pole across the street, and it was able to capture the incident. The Court has watched the video several times. Although the video is grainy and shot from a distance, witness statements seem to confirm that in the seconds before Michael Turner lung-

es towards Mr. Bennett, the situation seems relatively calm. The video shows one individual with his hands folded behind his head. The victim appears to be seen with both hand casually in his pockets, and there is a woman standing close to Mr. Bennett casually smoking a cigarette. Shortly after Michael Turner lunges towards William Bennett, it appears that the victim, Shelby Deutsch, can be seen trying to pull Mr. Turner off of Mr. Bennett. Shortly thereafter, it appears that Mr. Bennett pulls out a gun and shoots Mr. Deutsch. It appears that someone disarms Mr. Bennett and holds him on the ground until the police arrive.

(emphasis in original). Following a discussion of *Rodgers,* the order concludes with the following analysis:

The Court understands that Mr. Bennett may have a different version of the facts recited above. He could well argue that some of the witness statements do not comport completely with the video. However, this Court's role is only to determine if there is probable cause to believe that: (1) a crime was committed; (2) Mr. Bennett committed the crime; and (3) the force used by Mr. Bennett was not fully justified under the controlling provisions of KRS Chapter 503. Based upon a review of the discovery, the Court finds probable cause as to all three.

The Court reaches these conclusions even before viewing the videotape. Several witnesses confirm that Mr. Bennett *left the Deutsch residence after the initial confrontation.* He was obviously in no danger and left without harm. However, he returned to the Deutsch home sometime later with another indi-

vidual *and with a gun.*[1] There is probable cause to believe that any claim to self defense would have ended when Mr. Bennett safely exited after the original verbal altercation.

Even if the altercation had happened immediately upon his leaving, and immediately during or following the verbal altercation, the Court would reach the same conclusion. The videotape appears to show brief pushing and shoving and maybe a fist thrown for at most several seconds before the gun is pulled and Mr. Deutsch is shot. As reflected above, the videotape seems to reflect (there is no audio) that the situation was relatively calm just seconds before the incident. There was a woman casually smoking a cigarette and Mr. Deutsch was standing with his hands in his pockets. Within a very short time of the pushing and shoving beginning, a gun is pulled and a shot is fired. This Court determines that there was clearly probable cause to conclude that the force used by the Defendant was not justified under the controlling provisions of KRS Chapter 503.

(emphasis in original).

Bennett asked Respondent to reconsider Judge Mershon's order, alleging he made "factual errors" and "assumptions not related to the issue of immunity" and that he applied the "wrong test" on the immunity issue. Bennett's motion bears extensive quotation because it shows not only the specific grounds for his disagreement with Judge Mershon's order but that he was relying solely on the evidence of record and not asking to call witnesses.

The issue of self-protection arises at the time Mr. Bennett was under attack at his car. He was not grabbed by

---

1. Although the trial court did not make a specific finding that Bennett was the only person who had a gun, the Commonwealth has repeatedly stated that the discovery reflects that and Bennett has not contested that representation.

Michael Turner as the Order states. That is a claim made by the Commonwealth not reflected in any discovery. *At least one witness stated* Michael Turner was punching the Defendant multiple times at the time the shot was fired. *Judge Mershon obviously reviewed the CD supplied by the Commonwealth and not the enhanced CD filed by the Defendant.* The Court's finding that the situation was calm before Michael Turner's attack is incorrect. The situation was volatile—Tiffany Jecker was repeatedly getting into the Defendant's face and being pulled away by others. The last time she was pulled away is when Michael Turner attacked the Defendant.

Judge Mershon obviously relied heavily on the fact that the Defendant left the residence and returned. (He emphasized that twice in his Order). *This is not relevant* to the issue of self-protection and immunity *and ignores the witness's (sic) statements* that the Defendant left to get away from the conflict and only returned to pick up Jericka Deutsch and her son because he was called and requested to do so by both Shelby Deutsch and Jericka Deutsch.

\* \* \* \* \*

The fact that Mr. Bennett left the residence and returned is not relative [sic] to the issue of self-protection or immunity. Counsel agrees if Mr. Bennett had shot someone before he left the residence initially, immunity and self-protection would not be an issue. He was not under physical assault at the time he initially left. Judge Mershon seems to feel that the return to the residence was some indication that Mr. Bennett is not entitled to immunity or to use force in self-protection once he was attacked after he returned. *He ignores the discovery filed* that at least two witnesses state Mr. Bennett was called and requested to return to the residence to pick up Jericka and her son. *Shelby Deutsch states this repeatedly in his statement to Detective Schutte.* Interestingly, *Judge Mershon ignores the fact that the video reflects* the Defendant left the residence and returned to his car, getting inside, and only exited the vehicle after he was surrounded and confronted. Judge Mershon acknowledges the video tape shows a brief pushing and shoving and a fist thrown at most several seconds before the gun was pulled and fired. Mr. Bennett agrees the physical assault upon him was brief but was continuing, thus, he was allowed to use such force as was necessary to stop that attack upon him. The Commonwealth keeps arguing about the use of deadly physical force. There is no allegation of deadly physical force. Deadly physical force was not used.[2] If the Court finds that the Defendant was being physically assaulted and being punched, *as the CD reflects,* then he is justified in using physical force to stop that punching. The test Judge Mershon applied (commencing on page 3 of his Order) is not the correct test as outlined by *Rodgers* p. 754. The correct test is the "totality of circumstance[s]" must establish probable cause that the force used by the Defendant was not legally justified. *The discovery here does not establish probable cause that the force used was unlawful.*

(emphasis added).

The motion amply illustrated that Bennett was relying solely on "the discovery" of record in asking for reconsideration.

---

**2.** It is unclear how the firing of a gun into a victim's mouth is not the use of deadly physical force.

However, after hearing from counsel at the July 22 hearing (which had remained on the court's docket), and still not having reviewed the videotape or witness statements, Respondent scheduled another hearing for September 12, 2013, stating once again her intent to hear from witnesses on the issue of self-protection. The Commonwealth sought and was denied a writ of prohibition in the Court of Appeals and then appealed to this Court. We now reverse.

## ANALYSIS

### I. The Writ Standard and "Orderly Judicial Administration."

■ As stated in *Cox v. Braden*, this Court issues writs only

upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

266 S.W.3d 792, 796 (Ky. 2008) (*quoting Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004)). In the second class of writs, where a court is acting within its jurisdiction but erroneously, we have recognized an exception and dispensed with the element of great and irreparable harm if the case involves "a substantial miscarriage of justice" and "correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Cox*, 266 S.W.3d at 797. More than fifty years ago, in *Bender*, 343 S.W.2d at 801, this Court's predecessor noted that in acting on cases that fall within this exception "the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury." This exception has formed the basis for three recent opinions from this Court approving writs, and because the exception is applicable here we review each of those cases.

In *K.R. v. Commonwealth*, 360 S.W.3d 179 (Ky. 2012), this Court invoked the "orderly judicial administration" exception to affirm a writ where a district court had declined to transfer a juvenile to circuit court for prosecution despite KRS 635.020(4), the statute mandating transfer where there is probable cause to believe that a firearm was used in the commission of a felony. Reasoning that double jeopardy following prosecution of the charges in district court would preclude an adequate remedy by appeal, this Court turned to the orderly judicial administration prong and concluded that failure to follow a controlling, mandatory statute sufficed. The writ issued by the circuit court was affirmed.

In *Commonwealth v. Engle*, 302 S.W.3d 60 (Ky. 2010), this Court reversed the Court of Appeals, which had declined to issue a writ against a circuit judge who ordered the Department of Corrections to transport inmates to court proceedings in contravention of a statute clearly requiring the sheriff of the requesting county to perform those transport duties. This Court found the short time frame for implementing individual transport orders meant there would never be an adequate appellate remedy and, furthermore, that while one erroneous order might not be concerning, over time erroneous orders in 120 trial court venues would be a substantial interference with the orderly administration of justice. *Id.* at 65–66.

Perhaps the most analogous "orderly judicial administration" case for present purposes is this Court's unanimous opinion in *Commonwealth v. Peters*, 353 S.W.3d 592 (Ky. 2011), wherein this Court reversed

the Court of Appeals and reinstated a writ granted by the circuit court against a district court judge. The district court had ordered the Commonwealth to produce the complaining witness in a driving under the influence prosecution (the arresting officer) at a pretrial conference for purposes of an interview by defense counsel. This Court readily granted relief, observing first that there is no adequate remedy by appeal when the injury "could not thereafter be rectified in subsequent proceedings in the case." *Id.* at 595 *citing Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 614–15 (Ky. 2005). After noting that there is rarely an adequate appellate remedy where the challenged order allows discovery, 353 S.W.3d at 595 (citations omitted), because once information is released it cannot be recalled, we held the district court's order to appear and give testimony was akin to a discovery order, rendering any appeal after the fact inadequate. Next, this Court found that the district court's order would interfere with orderly justice administration by undermining the right of a witness in a criminal case to refuse to answer questions prior to trial. *Id.* at 596–98. While the district court could order that the witness appear at a pretrial hearing to facilitate the plea process, it was prohibited from ordering him to provide an interview prior to trial of the matter. In reaching our decision, we reviewed the Kentucky Rules of Criminal Procedure and case law regarding pretrial discovery by the defense and Commonwealth and found no basis for the ordered pretrial interview. Moreover, state and federal case law clearly provides that a witness may refuse to be interviewed prior to trial by either the prosecution or the defense. *Id. citing Radford v. Lovelace*, 212 S.W.3d 72, 82 (Ky. 2006) *rev'd on other grounds by Cardine v. Commonwealth*, 283 S.W.3d 641 (Ky. 2009).

## II. The Trial Court Was Acting Within Its Jurisdiction.

Turning to the case before us, the Commonwealth insists that this case involves the first class of writ, a trial court acting outside its jurisdiction. The Commonwealth essentially argues that once the immunity issue was addressed by the senior judge presiding in Respondent's absence, Respondent had no jurisdiction to readdress it under *Rodgers*. In that case, we stated that the defendant may raise the KRS 503.085 immunity bar at the preliminary hearing in the district court or await an indictment and move for relief from the circuit court, but in either circumstance the court "must proceed expeditiously." 285 S.W.3d at 755. We added, "[a] defendant may not, however, seek dismissal on immunity grounds in both courts," and directed that a circuit court not revisit the issue once it has been decided by the district court. *Id.* That is not the case before us. Moreover, the circumstances, if any, that would justify a trial judge revisiting his or her own earlier probable cause determination regarding immunity, while an interesting issue, is also not the case before us. Instead, the issue is simply one of subject matter jurisdiction and, more specifically, whether the Respondent, as the presiding judge of the division of Jefferson Circuit Court to which the *Bennett* case was assigned, has jurisdiction to make an immunity ruling, even if that entails setting aside an earlier order of that court.[3] Our precedent clearly establishes that subject matter jurisdiction is not lacking in that scenario.

---

3. There apparently was no written order setting aside the senior judge's order but the Respondent's oral rulings made clear her intent and an evidentiary hearing, for purposes of hearing live testimony from the victim[s] and witnesses, was scheduled.

In *Watson v. Humphrey*, 293 Ky. 839, 170 S.W.2d 865 (1943), a petitioner argued that the respondent circuit judge was without authority to set aside an earlier judgment (awarding the petitioner a first and prior lien) in order to address issues raised by a competing judgment involving the same property. Both judgments were entered in the same Jefferson County court. In denying the writ, the *Watson* Court noted jurisdiction in connection with the first class of writ "means jurisdiction of the subject matter ... The respondent unquestionably had jurisdiction to decide whether a judgment should be vacated or set aside and to determine its ultimate effect and its conclusiveness as to other parties. He may have acted erroneously but he was not acting beyond his jurisdiction." *Id.* at 866–67. The same principle applies here. Undoubtedly, Respondent had the necessary subject matter jurisdiction to set aside the prior order denying dismissal, just as she has the jurisdiction to revisit other interlocutory orders, when justified by the circumstances. *JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902, 909 (Ky. 2014). The Court of Appeals was correct in concluding that a writ, if available, must be premised on findings required for the second class of writ where a court is acting within its jurisdiction but erroneously.

### III. If Respondent is Acting Erroneously, There is No Adequate Appellate Remedy and the Orderly Judicial Administration Exception Applies.

Having determined that the Respondent is acting within her jurisdiction, the next question is whether an appeal will be adequate if she is in fact acting erroneously. KRS 22A.020(4) allows the Commonwealth in criminal cases to appeal "an adverse decision or ruling of the circuit court." Although this statute is not refer-

enced in *Commonwealth v. Bushart*, 337 S.W.3d 666 (Ky. App. 2011), it was the avenue for appeal of the circuit court's order in that case dismissing an indictment on immunity grounds. In that case, Bushart sought dismissal of the reckless homicide indictment claiming he acted in self-defense in shooting his girlfriend's former boyfriend. On appeal, the Court of Appeals reversed because the circuit court had improperly considered Bushart's affidavit in which he gave an account of the incident in rebuttal of the witness statements and a detective's report. As the *Bushart* panel noted, the trial court improperly considered matters outside the discovery of record, an error compounded by the fact that the defendant's affidavit contained statements that the Commonwealth could not cross-examine. *Id.* at 669.

One might argue that *Bushart* illustrates the availability of an adequate appeal right, *i.e.*, if the Respondent errs by holding a full-blown evidentiary hearing (which could easily result in a mini-trial of the charges) and then granting immunity to Bennett, the Commonwealth may appeal. However, this position completely misses the point. Respondent has scheduled a hearing at which subpoenaed witnesses, including the alleged victims of assault and wanton endangerment, are supposed to testify. Just as the witness statements that defense counsel sought by way of interview in *Peters* could not be undone once obtained, the testimony elicited at an unnecessary evidentiary hearing *prior to trial and upon no cited authority in our rules or case precedent* cannot be undone. As we said in *Peters*, "[o]nce the information is furnished it cannot be recalled." *Id.* citing *Bender*, 343 S.W.2d at 802. And, the circumstances in this writ action are even more concerning because they entail compelling testimony under

oath pretrial before a judge as opposed to the informal interviews at issue in *Peters.* Thus, if Respondent is acting erroneously there is no truly adequate appellate remedy.

■ Additionally, if Respondent is proceeding erroneously, there will be a "substantial miscarriage of justice" and action by this Court "is necessary and appropriate in the interest of orderly judicial administration." *Cox,* 266 S.W.3d at 797. *Nowhere in prior precedent of this Court or our Rules of Criminal Procedure is there authority for the defense subpoenaing a witness or victim in a criminal case to testify at a pretrial proceeding in circuit court about the facts surrounding the charges in an indictment.*[4] As we noted in *Rodgers,* pretrial evidentiary hearings in the Commonwealth have not focused on "proof that is the essence of the crime charged," but instead have related to searches and seizures, the right to counsel, the right to *Miranda* warnings, the competency of the defendant to stand trial and similar matters. 285 S.W.3d at 755. The exchange of information between the prosecution and the defense prior to trial has been controlled by the discovery provisions of our Rules of Criminal Procedure and the disclosure obligations recognized by the United States Supreme Court and this Court as a matter of due process. *Porter v. Commonwealth,* 394 S.W.3d 382 (Ky. 2011) (*citing inter alia United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

(1963); *King v. Venters,* 596 S.W.2d 721 (Ky. 1980)). Thus, in *Peters* we did not hesitate to prohibit a district judge from requiring, without reliance on any rule or case law, a witness to appear at a pretrial hearing for an interview by defense counsel. We noted that such an unprecedented action had "far-reaching implications regarding pretrial procedure in the Commonwealth." 353 S.W.3d at 596. The same can be said here, indeed more emphatically.

Our criminal justice system is premised on rules and case law precedent that provide for the collection of evidence, the pretrial exchange of information, *i.e.,* discovery, and the pretrial disposition of discrete issues such as suppression of illegally obtained evidence and judicial determinations regarding the competency of the defendant or a witness. This orderly pretrial process, absent a plea agreement, is followed by a trial in which the evidence is presented to a jury for its consideration of the case, including its assessment of witness credibility, and an eventual verdict based on the law as set forth by the court in the jury instructions. Self-defense immunity is undoubtedly an important right but allowing (or in this case, requiring) a defendant claiming self-defense to subpoena the victim[5] and other witnesses for sworn testimony at a pretrial evidentiary hearing *before* a jury is ever seated has "far-reaching implications," *id.* given "the large volume of Kentucky cases for which immunity may be an issue," *Rodgers,* 285 S.W.3d at 756. Acknowledging Kentucky's strong

---

4. Kentucky Rule of Criminal Procedure (RCr) 3.14(2) provides that at the preliminary hearing "[t]he defendant may cross-examine witnesses against him or her and may introduce evidence in his or her own behalf." However, that probable cause hearing is not intended to be a discovery device, *King v. Venters,* 596 S.W.2d at 721, and has never been construed as requiring the trial witnesses, includ-

ing the victims, to give testimony at the defendant's behest. Indeed, the rule specifically allows the probable cause finding to be "based upon hearsay evidence in whole or in part." CR 3.14(2).

5. The dissent conveniently ignores the fact that the defendant in this case intended to call the victim to testify prior to the trial.

preference for jury trials on criminal matters, discussed *infra*; the minimal evidentiary standard applicable to the threshold immunity determination, *i.e.*, probable cause that the force used was unlawful; and the inherent perils of allowing routine mini-trials [6] in advance of the jury trial of assault and homicide cases where self-defense (and also defense of others or property) is raised, in *Rodgers* we rejected the proposition that a defendant has the right to an evidentiary hearing. While *Rodgers* did not state that a circuit judge is precluded from ever *sua sponte* ordering a hearing, it did outline a procedure that must be followed before a hearing is ever legally appropriate. If judges ignore the *Rodgers* procedure and routinely convene pretrial evidentiary hearings in cases involving self-defense claims, the orderly administration of justice is threatened. In sum, all elements for issuance of a writ of the second class are present and we will proceed to address whether the Respondent is acting erroneously.

## IV. Respondent is Acting Erroneously and the Writ Should Issue.

In *Rodgers*, this Court observed that "[t]he trial judge's uncertainty regarding how to implement the immunity provision [in KRS 503.085 was] understandable because the statute offers little guidance." 285 S.W.3d at 754. KRS 503.085 grants immunity for the use of force to protect one's self, another person or one's property unless there is "probable cause that the force used was unlawful" under the specifically applicable statute. This statutory language led to our conclusion that a court faced with a self-defense immunity motion should apply a probable cause standard.

'[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.' Just as judges consider the totality of the circumstances in determining whether probable cause exists to issue a search warrant, they must consider all of the circumstances then known to determine whether probable cause exists to conclude that a defendant's use of force was unlawful. If such cause does not exist, immunity must be granted and, conversely, if it does exist, the matter must proceed. 285 S.W.3d at 754–55, *citing Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The more difficult issue was the procedure to be employed.

The sole remaining issue is how the trial courts should proceed in determining probable cause. The burden is on the Commonwealth to establish probable cause and it may do so by directing the court's attention to the evidence of record including witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record. Although Rodgers advocates an evidentiary hearing at which the defendant may counter probable cause with proof 'by a preponderance of the evidence' that the force was justified, this concept finds no support in the statute. The legislature did not delineate an evidentiary hearing and the only standard of proof against which a defendant's conduct must be measured is the aforementioned probable cause. We decline to create a hearing right that the statute does not recognize and note that there are several compelling reasons for our conclusion.

---

6. This practice would certainly expose defense attorneys who do not call victims to testify to some level of scrutiny, including ineffective assistance of counsel claims for failure to obtain discovery from the victim's own mouth via sworn testimony prior to trial.

*Id.* at 755. The compelling reasons for not having an evidentiary hearing included concerns that a proceeding involving "the same witnesses and same proof to be adduced at the eventual trial, in essence a mini-trial" before the matter got to a jury was "fraught with potential for abuse." *Id.* Also, a pretrial hearing could result in one element of the crime, the absence of a privilege to act in self-defense, essentially being decided in a bench trial. "[W]here probable cause exists in criminal matters the longstanding practice and policy has been to submit those matters to a jury," and we found no rational basis to allow otherwise. *Id.*

Three years later, *Hammond v. Commonwealth*, 366 S.W.3d 425, 433 n.8 (Ky. 2012), reiterated that an immunity claim "could be defeated by the Commonwealth upon a showing of probable cause based upon 'witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record' because one claiming self-defense immunity from prosecution has no right to an evidentiary hearing on the issue." [7] Most recently, *Commonwealth v. Lemons*, 437 S.W.3d 708 (Ky. 2014), a case involving a conditional guilty plea, we held that the appellate standard of review following the trial court's denial of a motion to dismiss on immunity grounds is whether there was "a substantial basis" for the

trial court's findings. *Lemons* contains a lengthy review by this Court of the witness statements and other written evidence of record considered by the trial court in denying immunity in a homicide prosecution arising from a fight outside a bar. The opinion highlights the nine pivotal findings made by the trial court in finding that there was probable cause to conclude the defendant's use of force was unlawful. *Id.* at 709–13. Importantly, the case illustrates how evidence of record, including particularly conflicting witness statements and law enforcement reports, can be reviewed and assessed in determining probable cause.

■ The foregoing cases establish that a defendant claiming self-defense immunity has no right to an evidentiary hearing with subpoenaed witnesses, and that the determination of probable cause can, and should, be made by the trial court on the evidence of record. In *Rodgers*, we recognized the new immunity statute, KRS 503.085, created an important shield against prosecution but we also acknowledged the Commonwealth's strong preference for jury trials in criminal matters, citing RCr 9.26, which provides that when a defendant waives a jury trial in writing, the Commonwealth and court must consent. Indeed, in *Short v. Commonwealth*, 519 S.W.2d 828, 833 (Ky. 1975), this Court

---

7. *Hammond* did not involve self-defense but rather the admission of the hearsay statements of a murdered witness pursuant to the doctrine of forfeiture by wrongdoing. Kentucky Rule of Evidence (KRE) 804(b)(5) provides that the hearsay rule does not apply to "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Earlier, in *Parker v. Commonwealth*, 291 S.W.3d 647, 689 (Ky. 2009), this Court had held that when forfeiture by wrongdoing is raised "[the] trial court must hold an evidentiary hearing before ruling on the admissibility of

the proposed hearsay." *Parker* then outlined who has the burden of proof, how the burden shifts and the level of proof required; preponderance of the evidence. The *Hammond* conviction was reversed, in part, for failure to hold the required evidentiary hearing under KRE 804(b)(5) and that evidence-related motion was contrasted with an immunity motion under *Rodgers*, where the burden is merely probable cause and there is no right to an evidentiary hearing. A KRE 804(b)(5) hearing is yet another example of a recognized pretrial evidentiary hearing which addresses issues that are not elements of the crime to be tried.

quoted at length from *Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930), to emphasize the fundamental importance of the jury as the fact-finder in a criminal matter.

> Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant.

■ Our resolution of the implementation of KRS 503.085 immunity through a probable cause assessment by the trial court on the evidence of record respects and balances both the immunity shield and the sanctity of the jury trial. As noted in *Rodgers*, if the Commonwealth fails to meet its probable cause burden based on the evidence of record, the proper response of the trial court is to grant the defendant's motion to dismiss the indictment. 285 S.W.3d at 754–55. Where there is probable cause to believe the force used by the defendant was unlawful, a jury hears the evidence, assesses the credibility of the witnesses and applies the law, including the law on self-defense, as presented in the jury instructions. *Id.* In the almost six years since *Rodgers* was rendered, this approach has clearly worked in the day-to-day practice of our trial courts, and our legislature, presumed to be aware of our rulings, has not amended the statute to provide otherwise.

Real Party in Interest Bennett (who initially sought simply to have the trial court consider an enhanced videotape of the incident) now contends that *Rodgers* allows a trial court to make the probable cause determination from evidence of record but does not require it to do so, *i.e.*, while Bennett may not be entitled to demand an evidentiary hearing, the trial court can decide to conduct one if it wants to hear from witnesses. This reasoning is simply erroneous.

■ *Rodgers* unequivocally requires the trial court to consider the evidence of record in making the probable cause determination on a KRS 503.085 immunity motion. This is, in essence, the "first step" in the orderly administration of justice when self-defense immunity is raised before the circuit court. In outlining how the trial courts "should proceed," *Rodgers* states "[t]he burden is on the Commonwealth to establish probable cause and it may do so by directing the court's attention to the evidence of record including witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record." 285 S.W.3d at 755. The "may" refers to the Commonwealth and how it goes about meeting its burden; plainly, this Court was not indicating that the trial court may or may not consider the evidence of record, opting instead to subpoena witnesses for a full-blown hearing. Indeed, *Rodgers* not only explicitly and emphatically rejects a defendant's entitlement to an evidentiary hearing, but also plainly directs the circuit court to look at the evidence of record.

In this case, despite both the Commonwealth's and Bennett's repeated requests, in writing and orally, that the Respondent

simply review the videotapes [8] and discovery of record as outlined in *Rodgers*, she never did so. Instead, she stated that she had to actually hear from the witnesses, opined that Bennett was entitled to make his immunity case at such a hearing, and asked defense counsel if he would be subpoenaing the witnesses. Respondent appears to have been unaware that this Court has unanimously ruled that a defendant claiming self-defense immunity is *not* entitled to an evidentiary hearing with live witnesses. Moreover, she may have mistakenly believed that an evidentiary hearing was necessary as with many pretrial motions where the trial court must rule based on a preponderance of the evidence. *See, e.g., Talbott v. Commonwealth,* 968 S.W.2d 76, 82 (Ky. 1998) (consent to search property a question of fact to be determined by a preponderance of the evidence following evidentiary hearing); *Grady v. Commonwealth,* 325 S.W.3d 333, 349 (Ky. 2010) (voluntariness of confession to be determined by preponderance of evidence after evidentiary hearing); *Dunlap v. Commonwealth,* 435 S.W.3d 537, 555 (Ky. 2014) (defendant's competency to stand trial to be determined by preponderance of evidence following evidentiary hearing); *Hammond,* 366 S.W.3d at 425 (forfeiture by wrongdoing exception to hearsay rule requires evidentiary hearing and determination by preponderance of the evidence).

In contrast to these pretrial motions, the self-defense immunity determination is simply a **probable cause** determination and to the extent a hearing is necessary, it is akin to the preliminary hearing conducted under RCr 3.14 where the Commonwealth may meet its burden "in whole or in part" with hearsay evidence, usually testimony from a police officer. The Commonwealth's witnesses, whoever they may be, are certainly subject to cross-examination by the defendant, and he may call his own witnesses but given the concerns outlined by this Court in *Rodgers*, the trial court should proceed judiciously in such matters to avoid a mini-trial of the criminal charges prior to the jury trial. A probable cause hearing is qualitatively and quantitatively different from an evidentiary hearing that culminates in a judicial ruling based on the preponderance of the evidence.

Respondent's disregard of the probable cause review process outlined in *Rodgers* is clear error, providing a strong basis for issuance of the requested writ, given the presence of the writ factors discussed *supra*.[9] The Commonwealth has established that disregard of this Court's precedent regarding the proper process for determining probable cause as to self-defense immunity would result in a "substantial miscarriage of justice" in this case and other future cases where it would disrupt the balance this Court struck in *Rodgers* and readily become a means of bypassing the criminal rules regarding pretrial discovery. *Bender,* 343 S.W.2d at 801. Like the single erroneous inmate transport order in *Engle,* 302 S.W.3d 60, which standing alone was not of enormous consequence, Respondent's order may seem

---

8. The dissent grossly understates the character of the evidence of record available to the trial court for a probable cause determination. The trial court was not confined to reviewing "documents and looking at pictures." In reality (as explained repeatedly in this opinion), there was video footage capturing the attack-footage that *both parties* implored the trial court to review.

9. Strangely, the dissent insists that the Commonwealth "did not complain" about the trial court's erroneous decision to compel an evidentiary hearing. To the contrary—the Commonwealth sought a *writ.*

clearly erroneous but limited in effect, yet as in *Engle*, the repetition of this error has great potential to undermine "the interest of orderly judicial administration." *Bender*, 343 S.W.2d at 801. Hence, a writ is justified and should issue.

### CONCLUSION

Without conducting a review of the evidence of record as outlined in *Rodgers*, the Respondent scheduled an evidentiary hearing with the intent of having the victim(s) and witnesses testify under oath about the incidents which resulted in the first-degree assault and wanton endangerment charges. This action was clearly erroneous because when a judge is faced with determining whether there is probable cause that a defendant's use of force in self-defense was unlawful she must first review the record, and in those cases where the determination simply cannot be made on the record any ensuing hearing is not a full-blown evidentiary hearing but a probable cause hearing as outlined in RCr 3.14. Disregard of the first step in this probable cause process in this case and potentially many other cases involving claims of defense of self, others or one's property will interfere with the orderly administration of justice and justifies a writ in this matter. For these reasons, we reverse the Court of Appeals and remand this matter to them for issuance of a writ.

Minton, C.J.; Barber, Keller, and Noble, JJ., concur. Keller, J., concurs by separate opinion in which Barber and Noble, JJ., join. Venters, J., dissents by separate opinion in which Cunningham, J., joins.

### KELLER, J. CONCURRING:

I concur with the result reached by the majority; however, I write separately to clarify what procedure I believe trial courts should follow going forward. As noted in the majority opinion, the Commonwealth bears the burden of showing that a defendant's use of force was not justified. To meet that burden, the Commonwealth may direct "the court's attention to the evidence of record including witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record." *Rodgers*, 285 S.W.3d at 755. I agree with the majority that the trial court's first step should be to consider the evidence of record. However, I also agree with Justice Venters that *Rodgers* does not "categorically bar a trial judge from conducting an evidentiary hearing," a hearing that should be the last step, and a step that should not be taken lightly.

As the majority states, the Commonwealth's burden is to establish that there is probable cause to believe that the force used was not justified. This is not a significant evidentiary burden, and it can be met by reference to the evidence of record. Thus, much like the procedural aspects of a Kentucky Rule of Criminal Procedure (RCr) 11.42 motion, the trial court should first look to the record before undertaking to conduct any hearing. If, as in an RCr 11.42 proceeding, the court determines that the record is sufficient to make a determination, the court should rule on the defendant's entitlement to immunity based on that record. If the record is not sufficient, the court may then conduct a hearing. However, in doing so, the court must keep firmly in mind that it is the Commonwealth that bears the burden of proof. Thus, the court should not, as it appears the court did here, *sua sponte* determine that a hearing is necessary prior to reviewing the record. In other words, if neither party requests a hearing, the court must decide the issue of immunity on the record before it. Furthermore, if it conducts a hearing, the court must also be mindful

that the purpose of a hearing is simply to establish probable cause.

Barber and Noble, JJ., join.

VENTERS, J., DISSENTS:

The first line of the majority's "Conclusion" reads like a formal indictment of Respondent Judge Eckerle: "Without conducting a review of the evidence of record as outlined in *Rodgers,* the Respondent scheduled an evidentiary hearing with the intent of having the victim(s) and witnesses testify under oath about the incidents which resulted in the first-degree assault and wanton endangerment charges." While Judge Eckerle may be guilty of "scheduling a hearing with intent to hear testimony," I do not accept the majority's conclusion that her conduct was "clearly erroneous." I do not believe that her conduct threatens the orderly administration of justice in the Commonwealth, and therefore, I respectfully dissent.

*Rodgers* does not clearly condemn the process that Judge Eckerle was trying to follow so her effort to do so cannot fairly be characterized as "clearly erroneous." I do not believe it is erroneous at all. Contrary to the Majority's suggestion, the *Rodgers* opinion does not go so far as to categorically bar a trial judge from conducting an evidentiary hearing when she believes that a hearing is the fairest and most efficient way to address the issue. Although *Rodgers* affords the Commonwealth the opportunity to establish probable cause based solely upon information found in the documentary record, and it makes clear that the defendant (and presumably the Commonwealth as well) has no absolute right to an evidentiary hearing with testimony from live witnesses, *Rodgers* does not strip away the trial court's discretion to hear testimony of real witnesses in lieu of reading untested, uncorroborated documents and looking at pictures.

I respectfully submit that the majority grossly overstates the perils facing the orderly administration of justice if we allow trial judges to resolve the threshold probable cause question of self-defense immunity by actually hearing testimony of live witnesses. For decades, now even centuries, our trial courts have held examining trials, preliminary hearings, suppression hearings—all sorts of pre-trial hearings that require the testimony of live witnesses. Far from being a substantial interference with the orderly administration of justice, these hearings are an integral part of the orderly administration of justice.

Despite the prevalence of such hearings, the administration of justice is not beset with rogue judges converting pre-trial hearings into the "mini-trials" feared by the majority. The judicial waters are not littered with the wreckage of litigants or causes destroyed by the excesses of pre-trial hearings. We have no history to suggest that trial judges will not responsibly perform their duties without the restraints imposed by our micro-management. Given the gravity of the self-defense immunity issue, I find it strange indeed that we would even attempt to impose such restraints. There is simply no rational basis for the majority's concern that without the fetters we now attach, the administration of justice will be threatened. Moreover, the restraint now imposed by this Court upon the trial court's discretion undermines the statute we claim to be enforcing because it sends the message that, to this Court, the probable cause determination for self-defense immunity is not worth the trouble of conducting a real hearing.

More specifically, and contrary to the majority's view, the factual record reveals

no indication that Judge Eckerle was forcing the issue into a "mini-trial." Judge Eckerle did not order the parties to present live witnesses. After hearing arguments from both sides about how to proceed, she announced her determination that an evidentiary hearing was appropriate. She set a date for the hearing and declined to review the video exhibit and the unsworn documents in the record until the hearing. She then asked counsel what witnesses the lawyers expected to present. The prosecutor said none; the defense counsel said he would present two witnesses—hardly a "mini-trial." There was no indication that either of the two witnesses would be unduly stressed or abused by testifying; and if they were, the remedy of a protective order would always be available. The Commonwealth did not complain that its case would be damaged or even inconvenienced by the procedure Judge Eckerle decided to employ.

There is no legitimate basis for the issuance of a writ. Judge Eckerle is not behaving erroneously; she is acting within her jurisdiction; and, her conduct poses no threat to the orderly administration of justice. This dispute is nothing but a tempest in a teapot.

Cunningham, J., joins.