# IN THE SUPREME COURT OF IOWA

No. 18–0564

Filed April 10, 2020

**STATE OF IOWA,**

Appellee,

vs.

**LAMAR CHEYEENE WILSON,**

Appellant.

Appeal from the Iowa District Court for Johnson County, Paul D. Miller, Judge.

A defendant appeals his convictions, arguing that the district court should have conducted a pretrial hearing on immunity under Iowa Code section 704.13 and also raising other issues. **AFFIRMED.**

Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, Janet M. Lyness, County Attorney, Rachel Zimmerman-Smith, Assistant County Attorney, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

This case is our attempt to resolve another open question under the 2017 "stand your ground" legislation. *See* 2017 Iowa Acts ch. 69, §§ 37–44 (codified at Iowa Code §§ 704.1–.3, .7, .13 (2018); *id.* § 707.6). A bitter dispute between two groups resulted in an individual from one group pulling out his handgun and firing five shots on a busy pedestrian mall in Iowa City. The shots killed one person from the other group and left two others seriously injured. The individual was charged with one count of murder and two counts of attempted murder. Following a jury trial, where his principal defense was justification, the individual was acquitted of the most serious charges and convicted of the lesser included offenses of voluntary manslaughter (one count) and assault with intent to cause serious injury (two counts).

On appeal, the defendant argues that Iowa Code section 704.13 entitled him to a pretrial evidentiary hearing where he could have presented his justification defense and been vindicated without need for a trial. *See* Iowa Code § 704.13. We conclude, however, that the 2017 legislation does not require pretrial hearings. Significantly, section 704.13 provides an immunity from "liability," *id.*, not an immunity from "prosecution" as in some other states with stand-your-ground laws. We also conclude that the defendant's other challenges to his convictions and sentence are without merit. Accordingly, we affirm the judgment below.

### II. Background Facts and Proceedings.

At approximately 1:15 a.m. on Sunday, August 27, 2017, a feud between two rival groups culminated in the fatal shooting of Kaleek Jones on the pedestrian mall in downtown Iowa City. One group was from Iowa City; the other was from Cedar Rapids.

Earlier that day, Daquan "Cutthroat" Jefferson, part of the Iowa City group, had been killed in a car accident following a police chase. News of his passing reached Donte Taylor, a member of the Cedar Rapids group that held deep-seated animosity toward Jefferson. Taylor accordingly posted his satisfaction with the news of Jefferson's untimely death on Facebook. This led to an online argument between Taylor and Jefferson's family.

That afternoon, friends and family of Jefferson paid tribute to him at the Iowa City home of Lamar Wilson, the defendant. Meanwhile, members of the Cedar Rapids group gathered in their hometown to watch a pay-per-view boxing match. When the match was over, the group—consisting of Taylor, Maxwell Woods, Xavier Hicks, D'Andre Hicks, Jones, and two others—drove to Iowa City and decided to go to the pedestrian mall. Taylor, Woods, and one other member of the group had firearms.

Jefferson's friends and family—including the defendant—were now gathered at the pedestrian mall as well. The defendant had a handgun in his jacket, for which he had a permit. Several women from that Iowa City group approached the Cedar Rapids group. They were upset and asked if anyone in the Cedar Rapids group had said "f*** Cutthroat" on Facebook. No one in the Cedar Rapids group admitted to doing so.

Jones, however, spoke with the women and seemed to calm them down. After he gave them a hug, the women returned to the rest of the Iowa City group on the other side of the pedestrian mall.

Shortly thereafter, the Cedar Rapids group walked back through the breezeway of the pedestrian mall and crossed paths with the Iowa City group. The defendant asked several members of the Cedar Rapids group if they had said "f*** Cutthroat." Suddenly, the defendant pulled his gun

and fired five times into the group from Cedar Rapids as the members of that group started running.

Each of the defendant's shots struck someone. D'Andre Hicks was shot three times, twice in the leg and once in the abdomen. Xavier Hicks was shot once in the chest. Both of them survived. Jones, however, was not so fortunate. He was shot once in the back with the bullet lodging in his spinal cord at the base of his skull. Several days later, he died in the hospital. None of the three victims were armed.

The defendant was promptly apprehended by Iowa City police officers, and his handgun was retrieved from the ground near him. Wilson reported to the officers that he pulled out his gun and discharged it only after observing one member of the Cedar Rapids group flash a gun. Yet Wilson admitted that the members of the Cedar Rapids group did not verbally threaten him, but rather "subliminally" threatened him. Wilson also admitted to firing the first shots, claiming he did so because he felt threatened.

Taylor, the person whom Wilson claimed to have seen flashing a gun, later testified he drew his gun only *after* Wilson pulled out his own gun. It is undisputed that Taylor never fired his gun.

Wilson also told police he had seen D'Andre Hicks with his hand in his pocket on a gun, but no trial witness supported Wilson's claim that D'Andre Hicks actually had a gun. When D'Andre Hicks was found on the ground near the scene of the shooting after having collapsed from his wounds, he was unarmed.

One member of the Cedar Rapids group, Woods, fired his gun twice while running away from the defendant. He fired "up high," however, and neither of his shots hit anyone.

On September 7, Wilson was charged by trial information in the Iowa District Court for Johnson County with one count of murder in the first degree, two counts of attempted murder, and three counts of intimidation with a dangerous weapon. *See* Iowa Code §§ 707.1, .2(1)(*a*)–(*b*), .11(1)–(2); *id.* § 708.6. The State later amended the trial information, withdrawing two of the intimidation counts and adding one count of gang participation. *See id.* § 723A.2.[1]

On September 18, Wilson filed a notice of the affirmative defenses of "Self-Defense, Defense of others, Defense against a forcible felony, Defense of property, and the right to 'stand your ground.' "

On October 20, Wilson filed a notice of statutory immunity and a motion to dismiss the case based on Iowa Code section 704.13.[2] The motion stated, "[H]aving acted reasonably and with justification to repel deadly force with like force, Defendant requests this Honorable Court GRANT Lamar Wilson's demand for immunity and dismiss this matter with prejudice because there is no crime perpetrated by him at all."

On November 2, the court held a hearing, in part, on whether to permit a pretrial hearing on Wilson's request for immunity and motion to dismiss. Both parties agreed that if there was a pretrial hearing, it would involve testimony from most of the trial witnesses. The State, however, maintained that section 704.13 did not contemplate a separate pretrial hearing.

---

[1]The gang participation charge was later severed and is not part of these proceedings.

[2]Iowa Code section 704.13 provides,

> A person who is justified in using reasonable force against an aggressor in defense of oneself, another person, or property pursuant to section 704.4 is immune from criminal or civil liability for all damages incurred by the aggressor pursuant to the application of reasonable force.

On November 3, the district court denied Wilson's motion to dismiss, ruling that "the case shall proceed to a jury trial, and the Court will postpone its ruling on Defendant's Motion to Dismiss until the jury has returned its verdict." In other words, the issue of immunity would be decided at the conclusion of the trial based on the "court's interpretation and consideration of the evidence," allowing a jury verdict to be reached while still allowing the court to "issue its own ruling" on Wilson's immunity.

Venue for trial purposes was changed to Polk County. On January 19, 2018, Wilson filed a motion pursuant to *State v. Plain*, 898 N.W.2d 801 (Iowa 2017). Specifically, Wilson raised the underrepresentation of African-Americans and Hispanics in recent Polk County jury pools and asked the court to take "remedial actions . . . to ensure that the jury pool in this case is adequately representative of racial minorities." In an addendum filed January 21, Wilson proposed that if the panel of 100 jurors allocated to his case underrepresented racial minorities, "the court should randomly select white jurors to be removed from the panel of 100 and replaced with randomly selected black and Hispanic jurors from [the rest of the jury pool]."

On January 22, the district court held a hearing on Wilson's *Plain* motion. The district court expressed concern that Wilson's proposed remedy might amount to "gerrymandering the pool." The parties acknowledged that the panel of 100 jurors assigned to this case included three who self-identified as African-American and four as Hispanic. The court denied Wilson's motion, finding no evidence presented of systemic exclusion.[3]

---

[3]The fifteen jurors who ultimately heard the case included one African-American. Three of those jurors were excused before deliberations; it is not clear whether the

The presentation of evidence began on January 25. Wilson did not testify or otherwise put on a defense. The district court's marshaling instructions for each offense required the State to prove beyond a reasonable doubt that "[t]he defendant did not act with justification." Four other instructions—numbers 40 through 43—explained the meaning of justification. During deliberations, the jury submitted one question: "What is the rule for stand your ground? Does it apply to this case. If so, what does it stand for?" The court responded in writing, "The applicable law regarding justification (self-defense) is incorporated in Jury Instruction Nos. 40, 41, 42, and 43. Please re-read these instructions carefully."

The jury found Wilson guilty of one count of voluntary manslaughter, a lesser included offense of first-degree murder, *see* Iowa Code § 707.4; two counts of assault with intent to cause serious injury, a lesser included offense of attempted murder, *see id.* § 708.2(1); and one count of intimidation with a dangerous weapon, *see id.* § 708.6.

Following trial, as ordered by the district court, the parties submitted summaries of trial witness testimony so the court could rule on the defendant's Iowa Code section 704.13 immunity motion. In addition, the court allowed the defendant to submit deposition testimony from Wilson's sister and his girlfriend, two eyewitnesses who had not testified at trial.

After reviewing this record, the district court denied Wilson's request for statutory immunity. The court ruled,

---

African-American juror was among those excused. Additionally, the defendant exercised a peremptory strike on an African-American juror.

Defendant has not proven, by a preponderance of the evidence, that he is entitled to the protection of immunity, as set forth in § 704.13.

The Court first finds that the evidence that has been presented at trial and the offers of proof [i.e., the deposition testimony] do not support a conclusion that Defendant was justified in the force he used in this incident, or that the force he used was reasonable force.

The undisputed evidence and testimony presented at trial and through the offers of proof clearly establish[] that Defendant indiscriminately discharged a dangerous weapon . . . five times into a crowd or assembly of people on the busy and crowded downtown Iowa City pedestrian mall (first weekend that college students returned for U of I fall semester) striking three unarmed individuals, including Kaleek Jones, who was shot in the back and subsequently died from his gunshot wounds.

The court went on to conclude, however, that section 704.13 was "void for vagueness." The court noted that the statute "does not set forth a legal procedure, one that is known to both prosecutors and defense attorneys, by which the right to immunity is protected."

On March 30, Wilson was sentenced consecutively to ten years in prison for voluntary manslaughter, two two-year terms for the assaults, and ten years in prison for intimidation with a dangerous weapon. Iowa Code § 902.9(1)(*d*)–(*e*); *id.* § 903.1(2). Wilson was also ordered to pay fines, surcharges, costs, and restitution. *Id.* § 902.9(1)(*d*); *id.* § 911.1(1). The district court also imposed a mandatory minimum of five years on the intimidation count pursuant to Iowa Code section 902.7 and the jury's finding that Wilson used a dangerous weapon to commit the offense.

Wilson appealed, raising six issues. First, Wilson contends he was entitled to a pretrial immunity hearing under Iowa Code section 704.13. Second, Wilson maintains the trial evidence was insufficient to support a jury verdict that he acted without justification. Third, Wilson argues the district court abused its discretion in denying a new trial because the

court's ruling indicates the State failed to establish the intent elements of voluntary manslaughter and assault with intent to cause serious injury. Fourth, Wilson contends the district court erred in concluding posttrial that he was not entitled to immunity. Fifth, Wilson insists the district court erred in denying his *Plain* motion for remedial measures to ensure the jury was comprised of a fair cross section of the community. Finally, Wilson claims the district court erred in considering the sentencing recommendation of the Iowa Department of Corrections as set forth in the presentence investigation (PSI) report. We retained the appeal.

### III. Standard of Review.

Questions of statutory interpretation are reviewed for correction of errors at law. *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018).

"In evaluating sufficiency-of-evidence claims, we will uphold a verdict if substantial evidence supports it." *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "We review for abuse of discretion a ruling denying a motion for a new trial on grounds the verdict is against the weight of the evidence." *State v. Heard*, 934 N.W.2d 433, 439 (Iowa 2019).

"We review constitutional issues de novo." *Plain*, 898 N.W.2d at 810. "We apply an abuse of discretion standard when the sentence challenged was within the statutory limits." *State v. Headley*, 926 N.W.2d 545, 549 (Iowa 2019).

**IV. Discussion.**

**A. Does Iowa Code Section 704.13 Contemplate a Pretrial Hearing?** We first address Wilson's contention that the district court should have determined his immunity from prosecution before trial.

During the 2017 session, the general assembly enacted stand-your-ground legislation—H.F. 517—that made a series of changes to the existing law on justification. H.F. 517, 87th G.A., 1st Sess. (Iowa 2017). *See generally* 2017 Iowa Acts ch. 69, §§ 37–44. Among other things, the legislation narrowed the "duty to retreat," by providing that "[a] person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force as specified in this chapter." 2017 Iowa Acts ch. 69, § 37 (codified at Iowa Code § 704.1(3)). Also, the law set forth two specific situations where "a person is presumed to reasonably believe that deadly force is necessary." *Id.* § 39 (codified at Iowa Code § 704.2A(1)). In addition, the law placed certain affirmative duties on a person who uses deadly force. *Id.* § 40 (codified at Iowa Code § 704.2B). Further, the law strengthened an existing statute that barred persons who used reasonable force against an aggressor from being held civilly liable. *Id.* § 44 (amending Iowa Code § 707.6).

Pertinent here is the following new "immunity" provision added by H.F. 517:

> **704.13. Immunity.**
>
> A person who is justified in using reasonable force against an aggressor in defense of oneself, another person, or property pursuant to section 704.4 is immune from criminal or civil liability for all damages incurred by the aggressor pursuant to the application of reasonable force.

*Id.* § 43 (codified at Iowa Code § 704.13).

Wilson maintains that this new section requires a pretrial determination of immunity. Without that, the section would be superfluous because other law already relieves persons who are justified in using reasonable force against an aggressor from civil and criminal liability. *See* Iowa Code §§ 704.3–.5; *id.* § 707.6. The State responds that section 704.13 does not say anything about a pretrial hearing. *See id.* § 704.13. Also, by its terms, it only provides for immunity from "liability," not immunity from prosecution.

1. *Stand-your-ground immunity in other states.* One reason to favor the State's interpretation is the example set by other states, which was in the background when our general assembly passed H.F. 517 in 2017. *See* Iowa Code § 4.6(2) ("If a statute is ambiguous, the court, in determining the intention of the legislature, may consider . . . [t]he circumstances under which the statute was enacted."). A number of other states have enacted stand-your-ground immunity laws. Some provide for immunity from "prosecution."[4]

---

[4]*See* Ala. Code § 13A-3-23(d)(1) (Westlaw through Act 2020-38) ("A person who uses force, including deadly physical force, as justified and permitted in this section is immune from criminal prosecution and civil action for the use of such force, unless the force was determined to be unlawful."); Fla. Stat. Ann. § 776.032(1) (West, Westlaw through 2020 2d Reg. Sess. of 26th Leg.) ("A person who uses or threatens to use force as permitted . . . is justified in such conduct and is immune from criminal prosecution and civil action for the use or threatened use of such force by the person, personal representative, or heirs of the person against whom the force was used or threatened . . . . [The] term 'criminal prosecution' includes arresting, detaining in custody, and charging or prosecuting the defendant."); Ga. Code Ann. § 16-3-24.2 (West, Westlaw through Laws 2020, Act 322) ("A person who uses threats or force in accordance with [the law] shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person . . . ."); Kan. Stat. Ann. § 21-5231 (West, Westlaw through 2020 Reg. Sess.) ("A person who uses force which . . . is justified . . . is immune from criminal prosecution and civil action for the use of such force . . . . '[C]riminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant. . . . A prosecutor may commence a criminal prosecution upon a determination of probable cause."); Ky. Rev. Stat. Ann. § 503.085 (West, Westlaw through 2019 Reg. Sess.) ("A person who uses force as permitted . . . is justified in using such force and is immune from criminal prosecution and civil action for the use of such force . . . . [T]he term 'criminal prosecution' includes arresting, detaining

These laws have generally been interpreted as giving the defendant the right to a pretrial immunity hearing. "[W]e conclude that the plain language of section 776.032 grants defendants a substantive right to assert immunity from prosecution and to avoid being subjected to a trial." *Dennis v. State*, 51 So. 3d 456, 462 (Fla. 2010).

> [B]y using the phrase "immune from criminal prosecution" in § 13A–3–23(d), the legislature intended to exempt from trial an accused who uses force as justified in § 13A–3–23, unless the accused's conduct is "determined to be unlawful." When read together, those phrases lead to the conclusion that a determination must be made, prior to the commencement of trial, as to whether a defendant's conduct was justified or whether it was unlawful. The only available mechanism for such a determination is a pretrial hearing.

*Harrison v. State*, 203 So. 3d 126, 130 (Ala. Crim. App. 2015).

> [A]s the statute provides that such person "*shall* be immune from criminal prosecution," the decision as to whether a person is immune under OCGA § 16–3–24.2 must be determined by the trial court [as a matter of law] before the trial of that person commences.

*Fair v. State*, 664 S.E.2d 227, 230 (Ga. 2008) (quoting *Boggs v. State*, 581 S.E.2d 722, 723 (Ga. Ct. App. 2003)).

> A true immunity—and we are convinced by the language used by the legislature . . . that the statute does confer a true immunity—carries with it the necessity of a procedural gatekeeping function, typically exercised by a detached magistrate, who will prevent certain cases from ever getting to a trial and a jury.

*State v. Hardy*, 390 P.3d 30, 38 (Kan. 2017).

---

in custody, and charging or prosecuting the defendant."); Okla. Stat. Ann. tit. 21, § 1289.25(F) (West, Westlaw through ch. 4 of 2d Reg. Sess. of 57th Leg.) ("A person who uses defensive force, as permitted . . . , is justified in using such defensive force and is immune from criminal prosecution and civil action for the use of such defensive force. . . . [T]he term 'criminal prosecution' includes charging or prosecuting the defendant."); S.C. Code Ann. § 16-11-450(A) (Westlaw through 2020 Act No. 115) ("A person who uses deadly force as permitted . . . is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force . . . .").

When criminal charges are filed, the only way courts can truly determine whether a defendant is immune from prosecution under the Stand Your Ground law is for the State to present evidence showing all of the facts and circumstances regarding the commission of the alleged crime; and then for the defendant to present evidence showing why, under all the facts and circumstances of the case, the defendant's use of force was reasonable and justified under the Stand Your Ground law. . . .

. . . Trial courts should continue to use motion hearings and preliminary examination proceedings to address arguments and precepts concerning Stand Your Ground immunity from prosecution.

*McNeely v. State*, 422 P.3d 1272, 1275–76 (Okla. Crim. App. 2018).

[W]e find that, by using the words "immune from criminal prosecution," the legislature intended to create a true immunity, and not simply an affirmative defense. . . . Immunity under the Act is therefore a bar to prosecution and, upon motion of either party, must be decided prior to trial.

*State v. Duncan*, 709 S.E.2d 662, 665 (S.C. 2011).

In at least one state where the law provides for immunity from prosecution, the highest court has held that the defendant is not entitled to a pretrial hearing as a matter of right. While trial courts in Kentucky may hold pretrial evidentiary hearings on immunity claims, the Supreme Court of Kentucky has stated "that a defendant claiming self-defense immunity has no right to an evidentiary hearing with subpoenaed witnesses, and that the determination of probable cause can, and should, be made by the trial court on the evidence of record." *Commonwealth v. Eckerle*, 470 S.W.3d 712, 724 (Ky. 2015).

Other state laws, similar to Iowa's, do not afford immunity from criminal prosecution. In North Carolina, the statute uses the phrase "immune from civil or criminal liability." N.C. Gen. Stat. Ann. § 14-51.3(b) (West, Westlaw through 2019 Reg. Sess.). To date, the North Carolina appellate courts have not approved of pretrial hearings and have indicated

that "[i]t is the jury, not the trial court, which must determine the reasonableness of the defendant's belief under the circumstances." *State v. Corbett*, ___ S.E.2d ___, ___, 2020 WL 542918, at *34 (N.C. Ct. App. Feb. 4, 2020). It should be noted that many of these other states only afford immunity from civil liability.[5] In any event, Iowa did not opt for the

---

[5]*See* Idaho Code Ann. § 6-808(1) (West, Westlaw through ch. 222 of 2020 2d Reg. Sess. of 65th Leg.) ("A person who uses force as justified . . . , or as otherwise permitted . . . , is immune from any civil liability for the use of such force . . . ."); La. Stat. Ann. § 9:2800.19(A) (Westlaw through 2019 Reg. Sess.) ("A person who uses reasonable and apparently necessary or deadly force or violence for the purpose of preventing a forcible offense against the person or his property . . . is immune from civil action for the use of reasonable and apparently necessary or deadly force or violence."); Mich. Comp. Laws Ann. § 600.2922b (West, Westlaw through P.A.2020, No. 67, of 2020 Reg. Sess.) ("An individual who uses deadly force or force other than deadly force in self-defense or in defense of another individual in compliance with section 2 of the self-defense act is immune from civil liability for damages caused . . . ." (Footnote omitted.)); N.H. Rev. Stat. Ann. § 627:1–a (Westlaw through ch. 7 of 2020 Reg. Sess.) ("A person who uses force in self-protection or in the protection of other persons . . . , in the protection of premises and property . . . , in law enforcement . . . , or in the care or welfare of a minor . . . is justified in using such force and shall be immune from civil liability for personal injuries sustained by a perpetrator which were caused by the acts or omissions of the person as a result of the use of force."); Ohio Rev. Code Ann. § 2307.60(B)(2)(c) (West, Westlaw through File 29 of 133d G.A.) ("Recovery on a claim for relief in a tort action is barred to any person . . . if . . . [t]he person suffered the injury . . . as a proximate result of the victim of conduct that, if prosecuted, would constitute a felony, a misdemeanor that is an offense of violence, an attempt to commit a felony, or an attempt to commit a misdemeanor that is an offense of violence acting against the person in self-defense, defense of another, or defense of the victim's residence . . . ."); 42 Pa. Stat. and Cons. Stat. Ann. § 8340.2(a) (West, Westlaw through 2020 Reg. Sess. Act 13) ("An actor who uses force . . . in self-protection . . . ; in the protection of other persons . . . ; for the protection of property . . . ; in law enforcement . . . ; or . . . consistent with the actor's special responsibility for care, discipline or safety of others . . . is justified in using such force and shall be immune from civil liability for personal injuries sustained by a perpetrator which were caused by the acts or omissions of the actor as a result of the use of force."); Tenn. Code Ann. § 39-11-622(a)(1) (West, Westlaw through 2020 1st Reg. Sess.) ("A person who uses force as permitted . . . is justified in using such force and is immune from civil liability for the use of such force . . . ."); Tex. Civ. Prac. & Rem. Code Ann. § 83.001 (West, Westlaw through 2019 Reg. Sess.) ("A defendant who uses force or deadly force that is justified . . . is immune from civil liability for personal injury or death that results from the defendant's use of force or deadly force, as applicable."); W. Va. Code Ann. § 55-7-22(d) (West, Westlaw through 2020 Reg. Sess.) ("The justified use of reasonable and proportionate force under this section shall constitute a full and complete defense to any civil action brought by an intruder or attacker against a person using such force."); Wis. Stat. Ann. § 895.62(2) (West, Westlaw through 2019 Act 102) ("[A]n actor is immune from civil liability arising out of his or her use of force that is intended or likely to cause death or great bodily harm if the actor reasonably believed that the force was

"prosecution" language that has generally been interpreted as affording a right to a pretrial hearing.

2. *Legislative history.* Also, legislative history favors the State's interpretation. *See* Iowa Code § 4.6(3) (stating that the court may also consider "[t]he legislative history"). During the floor debates over H.F. 517, Representative Windschitl was the House floor manager. H. Journal, 87th G.A., 1st Sess., at 534 (Iowa 2017). Representative Wolfe offered an amendment that included other provisions *plus* what became Iowa Code section 704.13. *Id.* Her amendment was voted down. *Id.* at 534–35. Representative Windschitl offered a different amendment that included *only* Representative Wolfe's section 704.13 language. *Id.* at 535. The two representatives then had the following colloquy:

> WOLFE: When I wrote this code section and put it into my amendment, what it was intended to do is make it clear that a person who uses justified reasonable force cannot be convicted of a crime and cannot be assessed damages, money. If it goes to a civil trial, he cannot be held civilly liable, and that's what I think that language would do, and one could argue that's already in current code in various other parts. But what I don't understand is how anything in your amendment would prevent a person who is arrested and charged with a crime from sitting in jail—for example, someone like Mr. Lewis—what in this amendment would somehow have resulted in him being released prior to trial?

> WINDSCHITL: You're absolutely correct, Representative Wolfe, and I misspoke there, and I apologize. This doesn't affect someone like Jay Rodney Lewis. The rest of the bill does. This amendment would make sure that anybody, that if criminal action had been taken against him or someone had tried to sue him and hold him civilly liable or take him into a civil court, that he would not have to pay those civil action fees and that he would be protected that way. So you're correct. This doesn't prevent Jay Rodney Lewis from sitting in jail. The rest of the bill does. This is a mere addition into

necessary to prevent imminent death or bodily harm to himself or herself or to another person . . . ."); Wyo. Stat. Ann. § 6-1-204(a) (West, Westlaw through 2020 Budget Sess.) ("[A] person who uses reasonable defensive force . . . is immune from civil action for the use of the force.").

that to make sure that they're not being held in financial limbo based upon someone else's bad actions.

*House Video HF 517 - Weapons Provisions*, Iowa Legislature (Mar. 7, 2017, 1:53:52 PM), https://www.legis.iowa.gov/dashboard?view=video&chamber=H&clip=H20170307124009459&dt=2017-03-07&offset=1793&bill=HF 517&status=i. This amendment was approved. H. Journal, 87th G.A., 1st Sess., at 535–36.

The foregoing dialogue between the two representatives suggests that Iowa Code section 704.13 was not intended to "prevent [a defendant] from sitting in jail [pending trial]." *See House Video HF 517 - Weapons Provisions*, Iowa Legislature (Mar. 7, 2017, 1:53:52 PM), https://www.legis.iowa.gov/dashboard?view=video&chamber=H&clip=H 20170307124009459&dt=2017-03-07&offset=1793&bill=HF 517&status =i.

3. *Practical considerations.* Additionally, practical considerations support the State's reading of Iowa Code section 704.13. *See* Iowa Code § 4.4 ("In enacting a statute, it is presumed that . . . [a] just and reasonable result is intended."). Frequently, when a defendant raises justification, it becomes the focus of the entire case. Thus, having a pretrial immunity hearing would often result in two proceedings covering the same ground.

For example, in this case, before denying Wilson's request for a pretrial hearing, the district court questioned both the defense and the State as to how many witnesses each would call at a pretrial immunity hearing. Wilson's counsel indicated he would call twenty-six, and the State responded, "Your Honor, we would, obviously, call the minuted witnesses that are listed in the Trial Information. . . . [W]e would call all our witnesses." At that time, the State had listed forty-one witnesses in its minutes of testimony.

4. *Immunity elsewhere in Iowa law.* Another factor on the State's side of the scale is how the concept of immunity from liability has functioned elsewhere. In other contexts, immunity from liability does not relieve the defendant from having to defend the case. For example, Iowa Code section 670.4 states that "the municipality shall be immune from liability" as to certain types of claims. Iowa Code § 670.4(1). But this does not mean the municipality has a right to a special pretrial mechanism to determine immunity. Rather, the municipality can use otherwise available procedures to assert its immunity, such as a summary judgment motion. *See* Iowa R. Civ. P. 1.981. If there are genuine issues of material fact, immunity can only be determined after trial. *See Keystone Elec. Mfg., Co. v. City of Des Moines*, 586 N.W.2d 340, 350 (Iowa 1998) (finding a material issue of fact whether the emergency response immunity applied). A municipality does not have a right to a pretrial *evidentiary* hearing on immunity.[6]

---

[6]Wilson quotes from *Nelson v. Lindaman*, 867 N.W.2d 1, 7 (Iowa 2015). There we said,

> Section 232.73 provides a form of qualified immunity. "Qualified immunity is a question of law for the court and the issue may be decided by summary judgment." Summary judgment is an important procedure in statutory immunity cases because a key purpose of the immunity is to avoid costly litigation, and that legislative goal is thwarted when claims subject to immunity proceed to trial.

*Id.* (citations omitted) (quoting *Dickerson v. Mertz*, 547 N.W.2d 208, 215 (Iowa 1996)). *Nelson* involved Iowa Code section 232.73, which provides,

> A person participating in good faith in the making of a report . . . pursuant to this chapter, or aiding and assisting in an assessment of a child abuse report pursuant to section 232.71B, shall have immunity from any liability, civil or criminal, which might otherwise be incurred or imposed.

Iowa Code § 232.73 (2009).

It is important to note what *Nelson* did not say or hold. *Nelson* did not approve of a special hearing to determine immunity; it indicated immunity could often be resolved in the existing summary-judgment framework. *Nelson*, 547 N.W.2d at 7. And the decision ultimately turned on the fact that the plaintiff lacked sufficient evidence to avoid summary judgment. *See id.* at 8 ("To avoid summary judgment, the plaintiff must have

5. *The rule disfavoring interpretations that render all or part of a statute superfluous.* Wilson's rebuttal to all of the above is that the State's interpretation of Iowa Code 704.13 renders it superfluous. The State disagrees, arguing that section 704.13 is needed to protect defendants who are justified in using deadly force from having to pay criminal restitution related to a nonhomicide conviction. With a good deal of creativity, the State posits a hypothetical scenario under which a defendant is acquitted of murder based on a justification defense but convicted of being a felon in possession of a firearm. According to the State, section 704.13 would protect the defendant from having to pay restitution to the aggressor's estate due to the felon-in-possession conviction.[7] This hypothesis attributes a Delphic level of foresight to those who voted for section 704.13.

It may be that Iowa Code section 704.13 is a belt-and-suspenders clause. In other words, it restates protections already in existing law. Representative Wolfe suggested this possibility during the House floor debates. *House Video HF 517 - Weapons Provisions*, Iowa Legislature (Mar. 7, 2017, 1:53:52 PM), https://www.legis.iowa.gov/dashboard ?view=video& chamber=H&clip=H20170307124009459&dt=2017-03-07&offset=1793& bill=HF 517&status=i ("[O]ne could argue that's already in current code in various other parts."). We acknowledge that the rule

---

evidence the defendant acted dishonestly, not merely carelessly, in assisting the DHS."); *id.* at 10 ("[W]e turn to the evidentiary record to determine if the defendants were entitled to summary judgment . . . ."); *id.* at 11 ("To avoid summary judgment, the Nelsons needed evidence generating a genuine issue of material fact that Dr. Lindaman acted *dishonestly* in communicating with Brown."); *id.* at 14 ("[C]ourts have denied summary judgment when there was evidence the defendant acted dishonestly reporting child abuse."); *see also id.* at 24–25 (Appel, J., dissenting) (concluding that a reasonable jury could find either good faith or a lack of good faith and therefore summary judgment should be denied and the question should be submitted to the jury).

[7]*But see State v. Lorenzo Baltazar*, 935 N.W.2d 862, 871 (Iowa 2019) (holding that a defendant who was not in lawful possession of a firearm may not assert the justification defense found in Iowa Code § 704.1(3) (2018)).

against treating legislative language as superfluous is a well-established rule of construction. *See* Iowa Code § 4.4 (2018) (setting forth the presumption that "[t]he entire statute is intended to be effective"). Still, we have never said this rule cannot be overcome by other considerations. In this case, we find other interpretive tools more compelling. These include (1) the legislative language, which speaks in terms of "immun[ity] from criminal . . . liability" rather than prosecution; (2) the absence of any pretrial hearing mechanism in the statute; (3) the legislative history that includes the colloquy between Representative Windschitl and Representative Wolfe; and (4) the impracticality of holding pretrial evidentiary hearings in criminal cases on justification. We therefore hold that Wilson had no right to a pretrial hearing on justification.

6. *Fundamental fairness.* Wilson also argues that the lack of a pretrial hearing meant his proceedings were fundamentally unfair. According to Wilson, his need to defend himself at trial against the criminal charges impeded the full presentation of his immunity defense. Later, at the posttrial hearing, Wilson notes he was only allowed to offer summaries of the trial testimony and deposition testimony from witnesses who had not testified at trial. He was not permitted additional live testimony.

We disagree with Wilson that this procedure was fundamentally unfair. Wilson received a more robust process than anyone asserting a justification defense had received before 2017, and potentially, he received more than the 2017 legislation required. Any trial requires defense counsel to make difficult choices. But we think Wilson overstates the dilemma he faced. Here is what he says in his appellate briefing:

> Wilson, like any criminal defendant, is constitutionally entitled to a trial in which he has no burden of proof, in which he can sit back and put on no evidence and entirely rely on the State's obligation to prove his guilt beyond a reasonable

doubt. However in this trial, Wilson had to prove he was justified by a preponderance of the evidence, so he had an affirmative obligation to provide a certain amount of evidence—he had to put in evidence of his own and cross-examine the State's witnesses in an attempt to undercut their testimony for the State or to elicit testimony to build his case for the judge. Each time he was forced to do that, he faced risk—risk that the witnesses will answer differently than expected or will further reinforce the State's case.

These statements are well-put, but they disregard the fact that Wilson's primary trial defense and his basis for statutory immunity were one and the same—i.e., justification. Wilson had every incentive to put on a strong justification defense at trial. Presumably, Wilson did not call his sister and his girlfriend during the trial because he did not believe they would be credible trial witnesses. When they were deposed for purposes of the posttrial immunity hearing, they were both impeached to a considerable degree by the State.

For all these reasons, we find the district court did not err in refusing to conduct a pretrial hearing on Wilson's justification defense. We do not reach the question whether section 704.13 could even come into play in this case given the lack of evidence that any of the specific individuals who was shot was an "aggressor."

**B. Was the Trial Evidence Sufficient to Prove Lack of Justification?** Wilson contends the State failed to prove lack of justification at trial. In Wilson's view, he used reasonable force to defend himself and others from the imminent use of force presented when he observed a gun pointed in his direction—and no reasonable juror could conclude otherwise.

We disagree. There was ample evidence of lack of justification. The evidence was essentially undisputed that Wilson started the verbal confrontation when the two groups passed each other on the pedestrian mall. Later, Wilson fired first. He did so indiscriminately, striking and

killing an individual (Jones) who had been a peacemaker and two other unarmed individuals. All three of them were running away when they were shot. A bystander who was not affiliated with either group and who was a very reluctant witness saw the defendant alone pull out a gun, before seeing him fire shots. We therefore reject Wilson's claim that his motion for a judgment of acquittal should have been granted.

**C. Should the District Court Have Granted a New Trial?** In denying the defendant's motion for new trial, the district court said,

> [T]he evidence clearly established that the Defendant indiscriminately discharged a dangerous weapon five times into a crowd or assembly of people in a busy and crowded downtown Iowa City pedestrian mall striking three unarmed individuals, including Kaleek Jones who was shot in the back and subsequently died from his wounds.

Wilson argues this ruling is tantamount to an abuse of discretion. In his view, the word "indiscriminately" cannot be squared with an intent to kill or injure that had to be present in this case. To find Wilson guilty of voluntary manslaughter, for example, the jury had to find Wilson "intentionally shot Kaleek Jones." *See* Iowa Code § 707.4(1) ("A person commits voluntary manslaughter when that person causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion . . . ."). So Wilson argues he should have been given a new trial.

We disagree. The evidence readily supports a jury finding that Wilson intentionally shot at people in the Cedar Rapids group. He fired five shots, and every shot struck someone in that group. "Indiscriminately," as used by the district court (and ourselves), means simply that he did not care which particular person he killed or injured.

**D. Should the District Court Have Granted Immunity Posttrial?** Wilson also argues that the district court should have exonerated him in its posttrial immunity determination. The State took the position that once the jury rejected Wilson's justification defense by finding him guilty beyond a reasonable doubt, issue preclusion eliminated the need for any further proceedings on justification. The district court nonetheless made a separate posttrial Iowa Code section 704.13 immunity determination. In doing so, it considered both the trial evidence and two depositions that were not part of the trial evidence. It then rejected Wilson's claim of immunity.

We too will reach the merits and leave the question of issue preclusion for another day when it is more thoroughly briefed. We conclude substantial evidence exists to support the district court's posttrial finding that Wilson was not entitled to immunity. As we have noted, the evidence at trial offered little support to Wilson's justification defense.

Posttrial, Wilson supplemented the record with two depositions. In one, Wilson's girlfriend testified she saw an unidentified individual point a gun at Wilson. Wilson himself did not make this claim in his recorded interview with police. In the other deposition, Wilson's sister testified she saw Donte Taylor point a gun at Wilson. Again, this was not something that Wilson alleged in his police interview. It was also something that no trial witness saw, and something that Wilson's sister had not discussed in an earlier deposition or in a police interview when she supposedly told them "[e]verything [she] remembered."

After reviewing these depositions, the district court placed greater weight on the trial evidence. As the court observed, "Notably, Lamar Wilson never [said] that any individual pointed a firearm at him before he

fired (as opposed to his sister's and girlfriend's testimony)." On this record, the district court could find that Wilson was not justified in using force within the meaning of Iowa Code section 704.13.

**E. Did the District Court Properly Overrule the Defendant's *Plain/Duren* Motion?** Wilson next contends that the district court improperly overruled his motion based on *Plain*, 898 N.W.2d at 821, and *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668 (1979). Before the commencement of trial, Wilson filed a motion noting that two recent Polk County jury pools of 255 and 234 potential jurors had contained only eleven African-American potential jurors each. Also, those pools contained only four and seven Hispanic potential jurors respectively. Wilson thus proposed the following:

> 1. It is counsel's understanding that 250 jurors will be called on the day in question, with 100 to be allocated to the defendant's case. Any jurors not required for other cases should not be released, but should be held until an adequate pool is established in the defendant's case.

> 2. Upon a determination that the pool allocated to the defendant's case underrepresents racial minorities, the court should randomly select white jurors to be removed from the panel of 100 and replaced with randomly selected black and Hispanic jurors from the remaining 150 jurors.

From the jury pool, 100 people had been assigned as potential jurors for Wilson's trial. They included only three who self-identified as African-American and four who self-identified as Hispanic.[8] Compared to the overall populations in Polk County, Wilson noted that both minority groups were underrepresented and this drove his *Plain/Duren* motion. However, Wilson did not make a record as to the racial makeup of jurors in the entire jury *pool* that day—only the subset who had been assigned to his trial. The *Plain/Duren* right applies to the jury pool. *See Plain*, 898

---

[8]Two jurors answered "other," and four did not respond as to their ethnicity.

N.W.2d at 822 ("[A] defendant must establish the proportion of group members in the jury pool is underrepresentative . . . ."); *see also State v. Lilly*, 930 N.W.2d 293, 305 (Iowa 2019) ("A defendant whose jury pool has a percentage of the distinctive group at least as large as the percentage of that group in the jury-eligible population has not had his or her right to a fair cross section infringed, and there would be no reason to aggregate data in that event."). For this reason, we conclude that his *Plain/Duren* motion was properly denied.

**F. Was the District Court's Consideration of the Sentencing Recommendation in the PSI Report Improper?** Wilson's final argument challenges the district court's reliance on the sentencing recommendation in the PSI report. Wilson contends there is no statutory authority for a court to rely on a sentencing recommendation in a PSI report. However, we recently addressed and rejected this same argument in another case. *See Headley*, 926 N.W.2d at 552 ("[T]he court did not abuse its discretion when it considered the department of correctional services' sentencing recommendation."). Accordingly, we also reject it here.

**V. Conclusion.**

For the foregoing reasons, we affirm Wilson's convictions and sentence.

**AFFIRMED.**